UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY WILLIAMS,

        Plaintiff,           Case Number 18-13606

v.           Honorable David M. Lawson

KURYAKYN HOLDINGS, LLC,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE

This product liability case is before the Court on the defendant manufacturer's motion for summary judgment. The motion is fully briefed, and oral argument will not aid in the disposition. The Court will decide the motion on the papers. *See* E.D. Mich. LR 7.1(f)(2). The sole question presented is whether the plaintiff has produced sufficient evidence for a jury to find that the allegedly defective product was made by the defendant. Because the plaintiff has not come forth with evidence to create a genuine fact issue on that essential element of his claim, the Court will grant the defendant's motion and dismiss the case.

I.

The historical facts leading to the plaintiff's injury are undisputed for the purposes of this motion. Plaintiff Larry Williams bought a used 2004 Harley Davidson motorcycle from a coworker in 2012. He did his own mechanical and maintenance work on the motorcycle. Sometime in the summer of 2013, the handlebar throttle grip broke and needed to be replaced. Williams procured a replacement from a local motorcycle parts dealer and installed it himself.

On September 2, 2017, Williams rode his motorcycle to a Kroger store to buy groceries. He drove the motorcycle up onto a raised curbside walkway in front of the store to park. After he

stopped the engine and while he was trying to deploy the kickstand, he suddenly noticed his right hand raise up into the air, while still clinging to the throttle grip. Williams tried to put his left leg out to stop the motorcycle from falling but was unsuccessful. The bike toppled onto its side, pinning and crushing Williams's ankle with its substantial weight. According to Williams, the throttle grip fractured internally, causing it to come loose from the handlebar while he was trying to maneuver the motorcycle, which resulted in the accidental tip-over. Williams retained an expert witness who has attested that an engineering analysis of the subject grip revealed a lack of reinforcing glass fiber material at a critical stress point where the fracture occurred, and the lack of reinforcement likely was caused by insufficient attention to certain details in the design and manufacturing of the injection-molded plastic parts inside the grip.

For the purposes of this motion, the defendant does not challenge any element of the product defect case except whether there is sufficient evidence to show that the subject handlebar grip was manufactured by the defendant.

The plaintiff submitted a post-accident photograph of the grip showing a part identification number impressed into the plastic material, which reads "426205." The parties have referred to the grip as the "6205" part. When Williams first determined in 2013 that the existing grip on his bike had failed and needed to be replaced, he perused an aftermarket parts catalog that he had on hand and identified a Kuryakyn-branded "ISO Grip" part, identified by catalog number 500-524, as a suitable replacement. Williams removed the broken grip and took it to D&W Detroit Motorcycle to obtain a replacement. At his deposition, Williams testified as follows:

> Q.   And so if you could again, tell me what about this catalog made you think that these parts that you were getting back in 2013 were from Kuryakyn?
>
> A.   This one, this ISO grip right here, is for Road King from 1973 to 2012 models. And as you can see, that's the same as this grip. You can get different colorings.

Q. I understand. And I'm going to represent to you I believe that's a Kuryakyn brand right there.

A. Right.

Q. And so I'm wondering, again, if that's what you are referring to as why you believe these came from Kuryakyn?

A. Correct.

Q. So when you got these grips in 2013, did you hand or show D&W the catalog and say I want these specific grips or how did you know that — you know, you showed them what you had.

A. Uh-huh.

Q. How did they know to get these?

A. Because I took mine off — I disassembled mine, and I took this one with me to show them.

Q. I understand that, but what I don't know is if this is a Kuryakyn grip.

A. Oh, I told them I wanted a Kuryakyn grip.

Q. You told them at D&W?

A. Yes.

Q. And then was it your understanding that that's what they gave you?

A. Yes.

Q. Do you recall if there was any packaging with the grip?

A. No, I don't think there was.

Q. Did they just give you the grips like they are sitting here on the table?

A. Uh-huh.

Q. There wasn't any like Kuryakyn wrap or plastic or cardboard box or anything along with it?

A. No.

Q. Did you ever see anything when you got the grips from D&W indicating that they were a Kuryakyn branded part? And I recognize it has been six years, so I'm just trying to get an understanding of what you remember.

>   A.   I don't recall seeing anything.
>
>   Q.   Okay.
>
>   A.   If there was, I didn't keep it.
>
>   Q.   Okay. But your testimony is you asked them for these particular grips that were Kuryakyn grips, and that you expected them at D&W to give you those grips for your bike?
>
>   A.   Correct.
>
>   Q.   And so they gave you grips, and then you put those on your bike?
>
>   A.   Yes.

Larry Williams dep., ECF No. 28-4, PageID.258.

Williams retained an expert witness to analyze the failed grip. Dr. Duane Priddy attested in his report that the plastic portion of the grip was made from "glass fiber filled ABS." The acronym "ABS" denotes the plastic compound "Acrylonitrile Butadiene Styrene." Dr. Priddy observed through various techniques that there was abnormal material flow and few reinforcing glass fibers around the fracture site. He opined that his observations were indicators of "a molding defect known as a 'poor weld line,'" which resulted in a "brittle area with little glass fiber content," that "was unable to take a load that would normally be carried by a properly molded article."

During discovery, the defendant produced a single engineering drawing that it says was associated with its grips identified by part number 426205 and manufactured in 2013. The drawing depicts multiple views of the product and details a part identifier to be impressed in the material at the end, the same as in the evidentiary photograph of the failed grip. The drawing bears a notation that it was "Released for Quote and Cost Estimating" on June 4, 2012. However, other boxes allocated for dates when the part was "Released for Tooling and Prototyping," and "Released for Production" are blank. Details on the drawing indicate the "Material" for the part as "Nylon," with a notation under "Material Details" reading "10% Glass Filled." The drawing

also bears the notation: "This part supersedes PN 406205T." In its responses to interrogatories, the defendant asserted that the failed grip at issue was not made by it, based on the attestation of the plaintiff's expert that the part he analyzed was made from ABS plastic, not nylon. It appears to be undisputed that those two materials are chemically distinct, and ABS is not the same as nylon. The defendant stated: "The motorcycle grip at issue is not a Kuryakyn part. Kuryakyn ISO grips, and specifically, Kuryakyn part number 6205, is made of Nylon material, not ABS." Def.'s Answers to Interrogs., ECF No. 28-9, PageID.312. The defendant did not produce any further responsive information about the grip, based on its position that the item was not made by it.

The defendant identified its former employee, Dan Parvey, as the engineer who created the product drawing that it disclosed. Parvey was a mechanical engineer for Kuryakyn in 2012, and he was responsible for the design of several product lines of grips. Parvey testified that Kuryakyn did not make the grip parts itself but created the designs and solicited bids from subcontractors to make them. Parvey testified that the drawing that was disclosed reflected the final specifications that were sent out to part makers, because any change such as specifying a different material would have resulted in a drawing revision. Parvey further testified that he did not know if any drawing existed for the predecessor part designated as 426205T, but he supposed it would have been kept in the drawing room at Kuryakyn with other "historical" drawings. Parvey attested, however, that for many older parts, "a lot of them didn't have drawings or too much documentation" available, because "[a] lot of these parts go back to the late 80's and 90's, and they've been at the same supplier since then."

Parvey conceded that "how [those parts] were made originally, I don't know and have no idea." Parvey further testified that he prepared a replacement design for the "T" part because the old design had poor fit and was "wobbly" when installed, and the new design included many

"critical dimension" specifications to fix the poor fit. However, Parvey did not know if the predecessor design had specified that it be made from nylon. Parvey testified that after the drawing was prepared, it would have been between one week and one month later when the part was released to production, but he did not know when that actually occurred. He also admitted that he did not know how long it would take for new parts to make their way through the supply chain into the hands of retail customers. Parvey attested that Kuryakyn made other types of "ISO Grips" during the same time period, but he did not know whether the designs for other products specified that they were to be made from nylon.

The defendant's answers to interrogatories were signed by Doug Lahde, who was identified as a Quality Engineer for Kuryakyn. The plaintiff asserts that no evidence has been presented by the defendant to show when Lahde worked for Kuryakyn or the basis of his knowledge to answer the interrogatories. Nevertheless, the answers stated the following: (1) "Kuryakyn ISO grips, and specifically, Kuryakyn part number 6205, is [sic] made of Nylon material, not ABS," (2) "Kuryakyn motorcycle grips, and specifically part number 6205, are distributed by Kuryakyn with packaging that clearly indicates the grips are Kuryakyn-branded parts," (3) "There are numerous manufacturers and sellers of 'knock-off' grips that look like Kuryakyn's ISO grips and part number 6205, but they are not Kuryakyn parts," (citing examples from an Amazon.com search for products that purportedly resemble Kuryakyn's grips), and (4) the design drawing that was produced in discovery "shows that the material specified for Kuryakyn's grip was 10% glass-filled Nylon, not ABS," and "Kuryakyn part number 426205 has always been made from Nylon." Def.'s Responses to Interrogs., ECF No. 22-6, PageID.213-217.

The plaintiff filed this case in the Oakland County, Michigan circuit court, pleading a single count for negligent product design and manufacture under Michigan's statutory product liability

scheme, Mich. Comp. Laws § 600.2945 *et seq.* After the case was removed, the Court established a discovery deadline, which was extended twice at the plaintiff's request. After the discovery period finally closed, the defendant filed its motion for summary judgment.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence and draws all reasonable inferences in favor of the non-moving party to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558 (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). That party must designate

specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." 350 F.3d at 546 (quoting 477 U.S. at 252) (quotations omitted).

Because this is a diversity action, the Court must follow state substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the state supreme court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state's highest court] would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

Under Michigan law, "[a] plaintiff bringing a products liability action, under either a negligence or a warranty theory, must show that the defendant supplied a product that was defective and that the defect caused the injury." *MASB-SEG Property & Casualty Pool v. Metalux*, 231 Mich. App. 393, 399, 586 N.W.2d 549, 552 (1998). In fact, "identification of the injury-causing product and its manufacturer" is "[t]he threshold requirement of any products liability action." *Roberts v. Owens-Corning Fiberglas Corp.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989) (citing *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 324, 343 N.W.2d 164, 170 (1984)).

A.

The defendant argues that the plaintiff has failed to put forth sufficient evidence to carry his burden of production on this threshold element. Plainly, there is no direct evidence in this record that the defendant manufactured the defective part. However, the plaintiff may prove that element by circumstantial evidence "when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence." *Metalux*, 231 Mich. App. at 399, 586 N.W.2d at 552. But here, the plaintiff's presentation falls short, because it is supported solely by an untenable chain of inferences upon inferences, which rely for key connections on nothing more than speculation.

It is well settled of course, that any "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing . . . particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). That applies *per force* to the question of product origin as any other element of the plaintiff's case. *Roberts*, 726 F. Supp. at 174.

The plaintiff contends that a jury reasonably could conclude that the subject grip was made by Kuryakyn based on the plaintiff's testimony that he asked his part dealer to give him a Kuryakyn replacement grip, and the subject item was given to him by them. He also argues that the jury can resolve the discrepancy with the material specification in the product drawing by inferring that the product drawing that was produced clearly indicates that the new part was intended to supersede a predecessor part, denoted as "426205T," and the absence of information on the product drawing indicating when it was released for production creates doubt about when the new part was put into production. That, in turn, the plaintiff says, supports a further inference that he must have obtained

"old stock" of the predecessor part since he obtained it only around a year after the new part was released for cost estimation (the first step of three phases in deployment to production), and it probably would have taken substantial time even after production began for a new part to work its way through the supply chain to retail dealers. For several reasons, the Court disagrees with that argument and concludes that the plaintiff has failed to carry his evidentiary burden here.

First, the plaintiff points to evidence from the drawing for the "426205" grip indicating that the part that was designed in 2012 replaced a predecessor part, denoted as "426205T." The defendant does not deny that such a predecessor part existed and was produced by it. Beyond that, however, no information has been presented to establish when the "T" part was made, or ceased to be made, or anything about its composition, let alone any affirmative evidence to suggest that it was, like the failed grip, made from ABS plastic. Moreover, the only available information undercuts the plaintiff's assertion that he obtained "old stock" of the "426205T" part, because the part identifier clearly shown on his item reads "426205," not "426205T." The plaintiff has not put forth any evidence to suggest that the older part was so marked.

Second, the plaintiff points to the absence of any specific dates on the product drawing documenting when the new "426205" part was released for prototyping and production. But there is affirmative testimony in the record by Dan Parvey that, after he prepared the product drawing that was disclosed, and after it was released for cost estimation in June 2012, the remaining phases before full production would have taken only between a week and a month. Parvey further testified that he remembered having meetings about the progress of the new part to production after the June 2012 date shown on the product drawing. The plaintiff has not offered any evidence to contradict Parvey's testimony suggesting that the new part went into production by sometime in July 2012. The plaintiff also has not put forth any evidence to suggest how long the new part

would have taken to make its way to the hands of part dealers and customers after that, other than his unsupported speculation that it must have been a long time. His assertion that "old stock" still was in the supply chain more than a year later is not supported by any evidence in the record and is purely speculative. Again, his position also is belied by the only product photograph in evidence, which shows that the failed item is marked "426205," not "426205T."

Third, the plaintiff has not produced any evidence to contradict the sworn interrogatory responses by the defendant's quality engineer stating that the "426205" part "always" was made from nylon and "never" was made from ABS plastic. The plaintiff does not dispute that the two compounds are distinct. His own expert determined that the failed grip was made from ABS plastic, not nylon. The plaintiff contends that the interrogatory answers are not "corroborated" by any other information demonstrating Doug Lahde's basis of knowledge to supply them. But he has not cited any legal authority holding that such "backup" for the sworn responses is required. Interrogatory responses are first-class evidence and are entirely sufficient to sustain a party's assertions of fact on a motion for summary judgment. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed *must support the assertion by . . . citing . . . particular parts of materials in the record, including . . . interrogatory answers*, or other materials.") (emphasis added). The plaintiff has not identified any legal authority holding that sworn answers to interrogatories do not supply a sufficient evidentiary based for granting a motion for summary judgment. The plaintiff has not pointed to any other evidence rebutting the answers. Moreover, neither party has offered any explanation for why, if the plaintiff wanted further to explore the basis of the declarant's knowledge, he did not depose Lahde during discovery. If Lahde was deposed, no reference to any testimony obtained thereby has been placed into the record by either party.

Finally, it is notable that the plaintiff's expert report indicates that he had an "exemplar" of the "426205" grip (presumably which was supplied by the defendant during discovery) that he was able to examine while preparing his report. Although the report says much about the examination of the failed grip, it says nothing about the "exemplar" product to which it was compared. Conspicuously absent, for instance, is any representation that the exemplar was tested and found also to be made of ABS plastic. The plaintiff asserted at his deposition that he believed the grips he identified from photos in a product catalog and the item he received were "the same grip." But also absent from the record is any information about visual characteristics of any admittedly genuine article of the "426205" grip and the item that the plaintiff obtained that would suggest that they share a common maker.

The plaintiff asks the Court to let a jury decide whether the defendant actually made the grip that he obtained, but he has not produced sufficient evidence from which a jury reasonably could find by a preponderance of the evidence that the item he got was made by the defendant. The plaintiff suggests that his grip was "old stock," but the only available information in the form of the part number marked on it suggests otherwise. He speculates that he must have obtained old stock of a predecessor part that was still in the supply chain more than a year after the initial approval of the successor part, but he has not put forth any evidence to support that speculation. He also speculates that the predecessor part was made from ABS plastic, like his grip, but, again, there is no evidence in the record to support that supposition. Where the plaintiff cannot positively show by proper evidence that the defendant made the specific item that caused his injury, he is not entitled to proceed to a jury on his product liability claim. *See Roberts*, 726 F. Supp. at 174.

When deciding a motion for summary judgment, the Court "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v.*

*Cadon Plating & Coatings, LLC*, 747 F.3d 419, 426 (6th Cir. 2014). "[C]onclusory allegations, speculation, and unsubstantiated assertions," however, "are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones*, 677 F. App'x at 282 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)). Moreover, "not every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

"[T]he non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, and '[t]he mere possibility of a factual dispute does not suffice to create a triable case.'" *Rushton v. Experi-Metal, Inc.*, No. 19-11318, 2020 WL 7480548, at *6 (E.D. Mich. Dec. 18, 2020) (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004)). The plaintiff has offered nothing more than unsupported speculation to sustain the product identification element of his claim in this case. Certainly, there is some "possibility" of a factual question here, but on the record so far presented, there is nothing more. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 932 (7th Cir. 1995); *see also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he party opposing [a properly supported motion for summary judgment] may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion."); *White v. Erdos*, No. 19-1009, 2020 WL 7253305, at *5 (S.D. Ohio Dec. 10, 2020) ("[P]laintiff's attempt to draw a negative inference from [the defendants'] alleged inaction is based only on speculation, which is insufficient to create a genuine issue of fact."), *R&R adopted*, 2021 WL 320736 (S.D. Ohio Feb. 1, 2021) (citing *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 371 (6th Cir. 2013)). The only positive evidence

here contradicts the plaintiff's position. He has put forth nothing more than the "scintilla of evidence" traditionally found to be inadequate. Without more, the record is decidedly one-sided enough in the defendant's favor to compel judgment as a matter of law.

B.

The plaintiff argues that his circumstantial case should be bolstered by an adverse inference justified by the defendant's refusal to produce evidence of the composition of the predecessor "426205T" part. He contends that it is implausible that the defendant would not possess product drawings or specifications for a predecessor part that was produced as recently as mid-2012, and since the defendant must have had information about the predecessor part, and no information about it was produced in discovery, the defendant must have deliberately either refused to produce the information or destroyed it. He believes that the information was destroyed by the defendant because it would have revealed that the predecessor part was made from the same material as the failed grip implicated by this suit.

The plaintiff contends, therefore, that the jury should be allowed to draw an adverse inference in his favor to support his case on product origin. Actually, he wants the jury to do much more than that; what he suggests is that it should draw an entire chain of inferences in his favor, none of which are supported by any affirmative evidence in the record. The defendant admits that a predecessor part "426205T" did exist and it made that part until sometime in the past. However, nothing in the record suggests when it was made, or ceased to be made, or from what material it was composed when it was made. Moreover, the relevance of any information about the predecessor part is questionable at best, since the plaintiff's failed grip clearly is marked "426205," not "426205T," and he has not put forth any evidence to resolve that discrepancy.

The plaintiff wants the jury to draw an adverse inference based on the defendant's failure to produce any information about the predecessor part, but he cannot sustain his case for such an inference because he has not put forth any evidence to show that any such information exists and was not produced. Nor has he demonstrated what, if anything, any drawing or other product documents might have revealed if they did exist. Dan Parvey testified that he knew that older products frequently were not associated with substantial product documentation; the plaintiff has not produced any evidence contradicting that testimony. If the plaintiff had procured, for example, an index or catalog of drawings suggesting that documents associated with the "426205T" part did exist and nevertheless were not produced, without explanation, then he might have a case for an adverse inference. But his demand for the inference is supported only by his own speculation that drawings or specifications must exist; that is simply not enough. *Laub v. Horbaczewski*, No. 17-6210, 2020 WL 7978227, at *20 (C.D. Cal. Nov. 17, 2020) ("At best, Plaintiffs speculate that categories of text messages exist, but that speculation is not sufficient to support an inference of spoliation against Defendants."); *Wimbush v. Matera*, No. 11-1916, 2014 WL 7239891, at *11 (D. Md. Dec. 17, 2014) ("A successful claim for spoliation of evidence cannot be premised on mere speculation on the existence of such evidence."); *Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1277 (S.D. Fla. 2003) ("In order to prevail on a claim for the destruction of a videotape, Plaintiff must at a minimum point to some facts indicating that such a video exists").

"[A] party seeking spoliation sanctions must do more than speculate evidence exists and must present evidence to the Court that the evidence existed at one time." *Scalia v. Cty. of Kern*, No. 17-1097, 2020 WL 5959905, at *8 (E.D. Cal. Oct. 8, 2020). The plaintiff has failed to do so here. Because the plaintiff cannot make the required showing, his demand for an adverse inference must be declined. *Id.* at *8 ("Because Plaintiff fails to present evidence that the video footage of

Ms. Morrissey-Scalia in the infirmary existed at one time, the Court finds spoliation sanctions should not be imposed.").

Moreover, the plaintiff not only asks that the jury infer that product drawing or other information about the predecessor "T" part existed; he wants the factfinder to go far beyond that inference and construct a chain of inferences that drawings or specifications, if they existed, would show that the predecessor part, like his failed grip, was made from ABS plastic. And he wants the jury to infer that the predecessor parts made from ABS still were being produced and were available in the supply chain more than a year after a successor part was approved for the first phase of deployment to production. And then he wants jurors to infer that the grip he obtained must have been a specimen of this "old stock," even though the markings on it indicate a different part number. And he wants them to infer all of that merely from the absence of any older part drawings, despite there being no evidence in the record to sustain any of those inferences. But there is a more plausible and far simpler inference that may be drawn from the evidence that has been presented: the grip that failed was not made by the defendant, because, despite any outward appearance of similarity, the undisputed evidence shows that it was made of a fundamentally different material than the defendant used for its product.

At this stage of the case, the Court must indulge reasonable inferences in the plaintiff's favor. But inferences, whether drawn by the Court or the jury, must consist of reasonable extrapolations from the evidence actually in the record. Here, only one of those inferences so qualifies, and it is the one that defeats the plaintiff's case. The plaintiff has failed to show that this record could be construed to prove "*by a reasonable probability*, that *the defect is attributable to the [defendant]*." *Metalux*, 231 Mich. App. At 399, 586 N.W.2d at 552. In order to prevail on this element of his case, the plaintiff's hypothesis about the failed grip's origin must be "more

probable than any other hypothesis reflected by the evidence," but his hypothesis here is decidedly improbable compared with the alternative hypothesis that the grip differs from the defendant's part specification simply because the item in question was not made by the defendant.

III.

The plaintiff has not put forth sufficient evidence to prove that the defendant made the failed part in question, and the only evidence available decisively suggests otherwise. He has not demonstrated that any adverse inference in his favor is warranted by any information that has been disclosed about the defendant's failure to produce other product-related information.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 22) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 7, 2021